IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA      )
                              )      CRIMINAL ACTION NO.
     v.                       )         2:16cr570-MHT
                              )            (WO)
ADRIAN DESHAWN THOMPSON        )
```

OPINION AND ORDER

This criminal case is before the court on the government's motion to commit defendant Adrian Deshawn Thompson to the custody of the Bureau of Prisons (BOP) for a mental examination. An examination by a local psychologist raised serious doubts about his competency to participate in the proceedings, as well as whether he had a mental disease or defect at the time of the alleged offenses, though she was unable to render an opinion about either issue.

Based on representations in the record as well as those made in open court on July 26, 2017, and for the reasons discussed below, the court will grant the government's motion and will commit Thompson to the custody of the BOP for an independent evaluation of

five issues: (1) whether Thompson is currently able to understand the nature and consequences of the proceedings against him or to assist properly in his defense (competency evaluation); (2) whether, if found incompetent, his competency can be restored (restoration determination); (3) whether, at the time of the commission of the acts constituting the offenses, he, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts (insanity-defense evaluation); (4) whether, at the time of the commission of the acts constituting the offenses, he had a mental disease or defect or any other mental condition otherwise bearing on the issue of guilt (otherwise-bearing-on-guilt evaluation); and (5) whether, if convicted, he requires hospitalization in lieu of incarceration, or instead may require other forms of treatment during or after incarceration (hospitalization-or-treatment evaluation).

## I.   FACTUAL BACKGROUND

Thompson is charged in a five-count indictment with three separate counts of drug possession with intent to distribute (alprazolam, hydrocodone, and amphetamine); one count of marijuana possession; and one count of possession of a firearm in furtherance of a drug-trafficking offense.

In July 2017, with jury selection and trial approaching, Thompson filed a notice, pursuant to Federal Rule of Criminal Procedure 12.2(b), that he "intends to offer at trial expert evidence relating to a mental disease or defect bearing on the issue of guilt." Notice (doc. no. 21). The notice referred to an existing forensic mental-health evaluation by Dr. Lauren Reba-Harrelson.

The government responded with a motion for Thompson's commitment for the purposes of conducting a mental examination of his current competency to proceed to trial as well as his sanity at the time of the offenses. The government's motion cited Dr.

3

Reba-Harrelson's report, which indicated that Thompson "has a history of psychosis, most prominently displayed as paranoid delusions, with a theme of being persecuted by others." Forensic Psychological Evaluation (doc. no. 30) at 23. The report also documented Thompson's past in-patient hospitalizations and outpatient psychiatric treatment, including a three-day hospitalization in August 2015 where he reported hallucinations and was prescribed antipsychotic medication; in-home treatment continuing into November 2015; and a further in-patient hospitalization in April 2016, during which he was diagnosed with Schizophrenia, Paranoid Type.

Dr. Reba-Harrelson provided a provisional diagnosis of Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, which is characterized by "co-occurring depressed mood and psychosis, causing distress and impairments." Id. at 25. She noted, however, that her evaluation produced only "equivocal information related to current or recent symptoms of

psychosis," and stated that she is not able to render an opinion about whether Thompson has experienced or is experiencing paranoid delusions or other signs of psychosis since his incarceration. Id. She indicated that, before she could render an opinion on his current mental state, she would need to review additional collateral sources to buttress, confirm, or refute his own reporting. Further, she described the limited nature of her evaluation, which was based on three visits over the course of a single month, offering only a "snapshot" of Thompson's condition. Id.

Thompson, who is incarcerated pending trial, does not oppose the government's motion to commit him to a BOP facility and agrees to expanded examinations to include a mental-competency examination, a restoration determination if needed, an insanity-defense evaluation, an otherwise-bearing-on-guilt evaluation,

and a hospitalization-or-treatment evaluation for sentencing purposes.[1]

## I. DISCUSSION

### A. Competency Evaluation

A court may order a competency hearing sua sponte "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). In advance of the hearing, the court may order a defendant to be committed for a reasonable period to the custody of the Attorney General to be placed in a

---

1. Indeed, prior to issuing this opinion and order, the court shared it with both counsel for the government and counsel for Thompson, and both sides orally informed the court that they agreed to the opinion and order.

suitable   facility   for   examination.      §§ 4241(b);
4247(b).

This   court   has   reasonable   cause   to   believe   that
Thompson   may   currently   be   suffering   from   a   mental
disease   or   defect   that   renders   him   incompetent   to
continue   with   the   jury   selection   and   trial.   Despite
the   limitations   of   the   outpatient   examination   format,
Dr.   Reba-Harrelson's   thorough,   27-page   evaluation
supports   that   conclusion:   her   report   amply   documents
the   possibility   that   Thompson   may   currently   be
exhibiting   symptoms   of   psychosis.   Accordingly,   the
court   will   order   a   competency   hearing   prior   to
proceeding   with   the   jury   selection   and   trial.

Further,   because   Dr.   Reba-Harrelson   was   unable   to
evaluate   adequately   Thompson's   competency   within   the
limitations   of   an   outpatient   examination,   the   court
concludes,   with   the   consent   of   both   the   government   and
Thompson,   that   commitment   to   a   BOP   facility,   where   he
may   be   observed   for   a   reasonable   period,   is   required   to
evaluate   adequately   his   mental   state.   The   examination

shall be conducted in a suitable facility closest to the court, unless "impracticable."  Id.

Once the examination is complete, the examiner will prepare a psychological report and furnish this report to the court and counsel, pursuant to 18 U.S.C. § 4247(c).  This report should include a description of Thompson's history and present symptoms; the psychiatric, psychological, and medical tests administered and their results; and the examiner's findings.  Id.  The report should also include the examiner's opinions as to diagnosis, prognosis, and whether Thompson is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  § 4247(c)(4)(A).


B. Restoration Determination

If, after the competency evaluation, the court were to find that Thompson is incompetent to stand trial,

the court would be required to recommit him to the custody of the Attorney General, where he would be hospitalized for treatment in a suitable facility in order to determine whether there is a substantial probability that, in the foreseeable future, he will attain the capacity to permit the proceedings to go forward.  18 U.S.C. § 4241(d)(1).  Therefore, the court concludes, with the consent of both the government and Thompson, that, if the examiner finds that Thompson is incompetent to stand trial, the evaluation report should include a determination as to whether there is a substantial probability that, in the foreseeable future, Thompson will regain competency.

## C.  Insanity Defense

Federal Rule of Criminal Procedure Rule 12.2, as summarized in the Advisory Committee Notes, "is designed to require a defendant to give notice prior to trial of his intention (1) to rely upon the defense of insanity or (2) to introduce expert testimony of mental

disease or defect on the theory that such mental condition is inconsistent with the mental state required for the offense charged."[2]

While Thompson's filing pursuant to Rule 12.2 was limited to the second type of notice, the government's motion requested a psychiatric examination to determine his insanity at the time of the offenses.  Ordinarily,

_____

2. Federal Rule of Criminal Procedure 12.2 provides in part:

"(a) Notice of an Insanity Defense.  A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk.  ....

"(b) Notice of Expert Evidence of a Mental Condition.  If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on ... the issue of guilt ..., the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. ...."

a court orders a psychological examination to determine insanity only after defense counsel, pursuant to Rule 12.2(a), files a notice that the defendant intends to rely on the defense of insanity.  While 18 U.S.C. § 4242(a) authorizes the court to then order a mental examination, that section is not the exclusive source of the power to do so, as the court, with its inherent powers over the administration of criminal justice, has the authority to order a psychological examination under appropriate circumstances.  See United States v. McSherry, 226 F.3d 153, 155-56 (2d Cir. 2000) (collecting cases).  Moreover, defense counsel's notice of his intention to rely on evidence relating to the separate but related issue of whether Thompson had a mental condition "inconsistent with the mental state required for the offense[s] charged," Fed. R. Crim. P. 12.2, Advisory Comm. Notes, empowers the court to order an examination "under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B).

Nevertheless, "[w]hen a defendant does not knowingly and voluntarily request a psychological examination for the insanity determination, an order requiring the examination may raise a Fifth Amendment concern." United States v. Pfeifer, No. 1:14-cr-417, 2014 WL 6673844, at *3 (M.D. Ala. Nov. 24, 2014) (Thompson, J.). But courts of appeals have consistently held that, "where the defendant has interposed the defense of insanity, the Fifth Amendment's privilege against self-incrimination is not violated by a court-ordered psychiatric examination." United States v. Byers, 740 F.2d 1104, 1111 (D.C. Cir. 1984). Here, while Thompson has not asserted an insanity defense in writing, defense counsel has indicated that, pursuant to Rule 12.2(b), he still intends to rely on expert evidence of Thompson's mental condition at the time of the offenses; and, perhaps most importantly, in response to the government's request for a BOP examination of Thompson's insanity at the time of the offenses, defense counsel consented, at

the hearing on the government's motion, to a court order providing for such.   Indeed, this concession on the record could be reasonably viewed as satisfying any need for a Rule 12.2 sanity-defense notice coming from the defendant.   The court finds that these circumstances "provide a sufficient basis to overcome any Fifth Amendment concern and to empower this court to order this examination."   Pfeifer, 2014 WL 6673844, at *4.

Beyond the court's legal authority to order it, an examination of Thompson's insanity at the time of the offenses seems both warranted and appropriate under the circumstances.   His history of psychosis and paranoid delusions calls into question his ability, at the time of the alleged violations, to understand the nature and quality or the alleged wrongfulness of his actions--the federal definition of insanity.   See 18 U.S.C. § 17(a). Moreover, because, as discussed below, the court will also order the examiners to opine on whether he had a mental disease or defect or other mental condition

otherwise bearing on the issue of guilt at the time of the offenses, the court expects that that inquiry will overlap in some respects with the separate inquiry into Thompson's insanity at the time of the offenses.

Therefore, the court will order that if, during the course of the competency commitment, Thompson's mental condition allows for an insanity determination, the BOP is to examine him and make a determination as to whether, "at the time of the commission of the acts constituting the offense[s], the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."  18 U.S.C. § 17(a).

### D. Mental Condition Otherwise Bearing on the Issue of Guilt

As stated, Federal Rule of Criminal Procedure Rule 12.2 "is designed to require a defendant to give notice prior to trial of his intention (1) to rely upon the defense of insanity or (2) to introduce expert testimony of mental disease or defect on the theory

**14**

that such mental condition is inconsistent with the mental state required for the offense charged." Fed. R. Crim. P. 12.2, Advisory Comm. Notes.

Thompson has filed the second type of notice, indicating that he "intends to offer at trial expert evidence relating to a mental disease or defect bearing on the issue of guilt." Notice (doc. no. 21). Because Dr. Reba-Harrelson's report documents his psychotic symptoms and paranoid delusions proximate in time to the acts constituting the alleged offenses, it suggests that he may have had a mental disease or defect or other mental condition that is inconsistent with the mental state required for the offenses charged.

At the hearing on the government's motion for examination, counsel for Thompson represented that he intends to rely on expert evidence of his mental condition at the time of the offense to negate a specific intent element (that is, mens rea) of count four, possession of firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C.

§ 924(c)(1)(A)(i).    Although   Thompson   intends   to
introduce evidence as to his mental condition relevant
to his guilt on only one of five charges, practically
speaking it appears that his mental state at the time
of the commission of the acts constituting all five
offenses are closely related.   The conduct for which
Thompson was charged all occurred on or around the same
date.   All   five   counts   of   the   indictment   charge
Thompson  for  conduct  "[o]n  or  about"  that  date.
Indictment (doc. no. 1).   Dr. Reba-Harrelson's report,
citing law enforcement, indicates that all of the drugs
and   firearms   at   issue   were   found   in   Thompson's
possession  after  a  traffic  stop  that  day.    An
examination of Thompson's "mental disease or defect or
any other mental condition ... bearing on the issue of
guilt" as to the firearms offense also could reflect on
his guilt pertaining to the other offenses.

Accordingly, the court will further order, pursuant
to  Federal  Rule  of  Criminal  Procedure  12.2(b),  an
examination of Thompson's "mental disease or defect or

any other mental condition ... bearing on the issue of guilt." That is, the examination should evaluate whether, at the time of the commission of the acts constituting the offenses, Thompson had a mental disease or defect or any other mental condition. If the examiners opine that he did, they should also opine whether that disease, defect, or other mental condition is inconsistent with the mental state required for the offenses charged in the indictment.[3]

### D. Hospitalization or Treatment Recommendation

If the criminal trial results in a conviction, Thompson faces a potentially lengthy period of incarceration. 18 U.S.C. § 4244 "allows for hospitalization rather than mere imprisonment for a

------

3. That the court has authorized an evaluation of whether Thompson was insane at the time of the alleged offenses, as well as whether he had a mental disease or defect or other condition that is inconsistent with the mental state required for the offenses charged, should not be taken as indication that the court believes evidence, including expert testimony, touching on these issues is or is not admissible.

defendant who requires inpatient mental-health treatment." United States v. Hollon, 983 F. Supp. 2d 1379, 1380-81 (M.D. Ala. 2012) (Thompson, J.). Section 4244 provides that either party or the court may move for a hearing on the present mental condition of the defendant to determine whether hospitalization in lieu of incarceration is warranted if "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a).

Because § 4244 applies to convicted persons, the court does not order such a hearing at this time. But, of course, it may need to in the future. Therefore, with the agreement of both the government and Thompson, the court will order that the psychological evaluation address whether Thompson is suffering from a mental disease or defect as a result of which he would be in need of custody for care or treatment in a suitable

facility in lieu of incarceration, if he were to be convicted, and, alternatively, if the examiner concludes that Thompson is suffering from a mental disease or defect but that it is not such as to require his custody for care or treatment in a suitable facility, the examiner should also offer an opinion concerning the sentencing alternatives that could best accord Thompson the kind of treatment he does need. See 18 U.S.C. § 4244(b). These "sentencing alternatives" could include recommendations for treatment in prison as well as treatment that follows imprisonment.

* * *

Accordingly, it is ORDERED that the government's motion for a mental competency examination (doc. no. 25) is granted as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 4241 and §§ 4247(b) & (c), the United States Marshal for

this district shall immediately remove defendant Adrian Deshawn Thompson to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution.   The statutory time period for the examination shall commence on the day defendant Thompson arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 4247(c), the examining psychiatrists or psychologists conducting the mental examination of defendant Thompson shall report in writing to this court their findings, opinions, and conclusions relative to the competency or incompetency of defendant Thompson as well as other issues related to his mental state.   They shall specifically report to and advise this court as to the following issues:

(a) whether in their opinion defendant Thompson is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense;

(b) whether in their opinion, if found incompetent, there is a substantial probability that in the foreseeable future defendant Thompson will attain the capacity to permit the proceedings to go forward;

(c) whether in their opinion, at the time of the commission of the acts constituting the offenses, defendant Thompson, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts;

(d) whether in their opinion, at the time of the commission of the acts constituting the offenses, defendant Thompson had a mental disease or defect or any other mental condition bearing on the issue of guilt; and

(e) whether in their opinion, if convicted, defendant Thompson requires hospitalization in lieu of incarceration, or instead may require other forms of treatment during or after incarceration.

It is further ORDERED that the parties are to arrange for the Forensic Psychological Evaluation of Dr. Reba-Harrelson (doc. no. 30) to be furnished to the Bureau of Prisons so that it may be considered by the psychiatrists or psychologists conducting the mental examination of defendant Thompson.

DONE, this the 31st day of July, 2017.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**